By the Court.
 

 We must first determine the question whether the state of Ohio had the power to impose taxes on the sale and use of the items of tangible personal property in question. Most of the items involved in the assessment were trucks, trailers, tires and parts consumed in connection with their operation, and Midwest and Mutual did operate in interstate commerce.
 

 That a state may not impose a tax which is a burden on interstate commerce is an established principle of law. The General Assembly recognized this in providing in Section 5546-2, General Code, that “the tax hereby levied does not apply to the following sales: # * *
 

 “8. Sales which are not within the taxing power of this state under the Constitution of the United States.”
 

 There is a similar provision in Section 5546-26, General Code, pertaining to the use tax.
 

 It does not follow, however, that interstate commerce is immune from taxation by a state. The Supreme Court of the United States, in interpreting the commerce clause of the federal Constitution, in the case of
 
 Western Live Stock
 
 v.
 
 Bureau of Revenue,
 
 303 U. S., 250, 82 L. Ed., 823, 58 S. Ct., 546, 115 A. L. R., 944, stated in the fourth paragraph of the headnotes:
 

 “The commerce clause does not relieve those engaged in interstate commerce from their just share of the state tax burden, even though the cost of doing the
 
 *405
 
 business be thereby increased.” See, also, 51 American Jurisprudence, 262, Section 203.
 

 The sales and use taxes involved in the instant case-are nondiscriminatory and do not have a tendency to' prohibit interstate commerce; they are not levied on interstate commerce at all but affect such commerce-only incidentally and are levied without discrimination against interstate and intrastate commerce. Only such sales as are made within the state are taxed, and not those sales outside its borders. In our opinion the tax assessment as modified by the Board of Tax Appeals does not constitute such a burden on interstate commerce as to render the assessment invalid under the Constitution of the United States.
 

 The next question raised is whether the decision of the Board of Tax Appeals is unreasonable or unlawful in holding that Midwest and Mutual were not rendering a public utility service prior to November 5, 1940, and that subsequent to that time they were rendering-such a- service.
 

 As its name indicates, the term, “public service,” implies a public use and service to the public, and the principal determinative characteristic of a public utility is that of service to, or readiness to serve, an indefinite public which has a legal right to demand and receive the utility’s services or commodities. 43 American Jurisprudence, 571, Section 2.
 

 The transportation of goods by motor vehicle is a business which has been found so related to the public interest and welfare as to require special regulation and control. See Section 614-84
 
 et seq.,
 
 General Code. When a company is authorized to act as a common carrier and holds itself out as willing to serve the general public and, in fact, does serve such public, it is engaged in rendering a public utility service within the contemplation of the sales and use tax laws. Sections-5546-1 and 5546-25, General Code.
 

 
 *406
 
 Although it is true that Midwest and Mutual could have at any time acted as common carriers, the Board of Tax Appeals determined that until November 5, 1940, they operated as contract carriers and were not during that period rendering a public utility service. The authorization to act as a common carrier does not in and of itself conclusively establish that there is such operation. The actual operation of a business determines its legal status, and, although Midwest and Mutual were authorized to act as common carriers, they did not in fact so operate but instead acted as contract carriers. Therefore, the decision of the Board of Tax Appeals in holding that Midwest and Mutual were not rendering a public utility service up until November 5, 1940, and were rendering such service thereafter was neither unreasonable nor unlawful.
 

 Was the decision of the Board of Tax Appeals unreasonable or unlawful in holding the sale and use of certain items of tangible personal property taxable and not excluded under the provisions of Sections 5546-1 and 5546-25, General Code? Its decision was based on the ground that such items were not used
 
 directly
 
 in rendering a public utility service within the meaning of the provisions of the sales and use tax laws for exception. In the case of
 
 Fyr-Fyter
 
 v.
 
 Glander, Tax Commr.,
 
 150 Ohio St., 118, 80 N. E. (2d), 776, this court had occasion to construe the word, “directly,” as used in Sections 5546-1 and 5546-25, General Code, in regard to the business of “mining.” Paragraph one of the syllabus of that case is as follows:
 

 “The exception in the definition of ‘retail sale’ and ‘sales at retail’ in Section 5546-1, General Code (a part of the Sales Tax Act), and in the definition of ‘use’ in Section 5546-25, General Code (a part of the Use Tax Act), of such sales or use of tangible personal property to be used or consumed ‘directly in the
 
 *407
 
 production of tangible personal property for sale by * * * mining,’ includes the sale or use of only those items which are indispensable in mining and does not include items which are merely convenient or facilitative.”
 

 None of the items the sale and use of which were held taxable in the instant case was indispensable in rendering a public utility service. It is true that the items were used in the business, but their use was merely convenient or facilitative, and being such were not entitled to be excluded from taxation under the provisions of Sections 5546-1 and 5546-25, General Code.
 

 The final question to be determined is the matter of the separation of the assessment against the appellants. The Board of Tax Appeals found, and the evidence supports its finding, that Carriers Equipment Company and Hayden Truck Lines, Inc., were the agents of Midwest Haulers, Inc., and Mutual Trucking Company, for the purpose of purchasing and holding equipment for Midwest and Mutual, and in our opinion the sales and use tax assessments were properly assessed against these appellants jointly.
 

 It is the function of, this court on appeal pursuant to Section 5611-2, General Code, to determine as a matter of law whether the Board of Tax Appeals acted unreasonably or unlawfully in its decision, that is, to determine whether the correct principles of law were applied in a reasonable manner.
 

 In our opinion the decision of the Board of Tax Appeals in this case is neither unreasonable nor unlawful and is affirmed.
 

 Decision affirmed.
 

 Wetgandt, C. J., Matthias, Hart, Zimmerman, Sohngen and Stewart, JJ., concur.
 

 Turner, J., not participating.